*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0113P (6th Cir.)
File Name: 04a0113p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

SALLY PRATT, et al.,
    *Plaintiffs-Appellants/*
    *Cross-Appellees,*

          *v.*

VENTAS, INC., a/k/a Vencor,
Inc., et al.,
    *Defendants-Appellees/*
    *Cross-Appellants,*

JOHN DOES, #1 through #5,
    *Defendant-Appellee.*

Nos. 02-5632/5638

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00317—John G. Heyburn II, Chief District Judge.

Argued: March 18, 2004

Decided and Filed: April 20, 2004

---

Before: COLE and GILMAN, Circuit Judges;
SCHWARZER, Senior District Judge.*

---

## COUNSEL

**ARGUED:** James M. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellants. David B. Tachau, TACHAU, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, for Appellees. **ON BRIEF:** James M. Morris, Sharon K. Morris, MORRIS & MORRIS, Lexington, Kentucky, for Appellants. David B. Tachau, John D. Dyche, TACHAU, MADDOX, HOVIOUS & DICKENS, Louisville, Kentucky, for Appellees.

---

## OPINION

---

RONALD LEE GILMAN, Circuit Judge. Sally Pratt and others (Plaintiffs) filed various state-law claims against a large health care provider, Vencor, Inc., which subsequently spun off a subsidiary with the same name as the parent company, and then changed the name of the parent company to Ventas, Inc. When "New Vencor," the subsidiary, filed for Chapter 11 bankruptcy in the Bankruptcy Court for the District of Delaware, Ventas agreed to make substantial financial contributions towards New Vencor's reorganization. In exchange, New Vencor's Reorganization Plan granted Ventas a full release from Plaintiffs' claims. The bankruptcy court entered a Confirmation Order approving the Plan, which

---

*William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

permanently enjoined Plaintiffs from pursuing their claims against Ventas.

Ignoring the injunction, Plaintiffs sued Ventas in the district court below, which subsequently dismissed their case for lack of subject matter jurisdiction. Plaintiffs then filed a motion to vacate the Confirmation Order in the Delaware bankruptcy court. Because Supreme Court precedent requires us to accord preclusive effect to the Delaware bankruptcy court's conclusion that it had jurisdiction over this matter, Plaintiffs are barred by res judicata from continuing their suit in this court. We therefore **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Two lower court opinions, one in Delaware and the other in Kentucky, have summarized the relevant facts of the present case. *See In re Vencor, Inc.*, 284 B.R. 79 (Bankr. D. Del. 2002), and *Pratt v. Ventas, Inc.*, 273 B.R. 108 (W.D. Ky. 2002). Because the principal issues on appeal are questions of law, we abstract the following undisputed facts from the lower courts' opinions:

> Prior to May, 1998, Ventas operated, *inter alia*, several nursing homes under the name Vencor, Inc. ("Old Vencor"). On May 1, 1998, Old Vencor changed its name to Ventas and spun off its nursing home operations to a newly incorporated entity named Vencor, Inc. ("New Vencor"). Ventas retained ownership of the real estate and became New Vencor's landlord at many of the facilities. . . . On September 13, 1999, New Vencor and several of its affiliates filed for relief under chapter 11 of the Bankruptcy Code.

*In re Vencor, Inc.*, 284 B.R. at 81.

> Each of the named Plaintiffs in this case had filed a state court suit against one of the Vencor entities prior to or soon after the commencement of its bankruptcy proceedings. In September 1996, Plaintiff Sally Pratt filed suit against "old" Vencor . . . for age discrimination and wrongful termination. In March 1998, Plaintiff Valiza Nystrom filed suit against Vencor Hospitals Texas . . . for constructive discharge. In October 1998, Mark Dayman, Executor of the Estate of Liesel Dayman, filed suit against "new" Vencor . . . for negligence. In November 1999, Plaintiff Robert McCray, pursuant to a Power of Attorney for Lee Ona Lee, sued Vencor Nursing Centers East . . . for negligence.

*Pratt*, 273 B.R. at 110. Finally, Nystrom's attorney Mark Byrne filed suit against Vencor for tortious interference with his prospective contractual advantage with his client. *Id.* at n.2.

After New Vencor filed for bankruptcy, it filed motions pursuant to 11 U.S.C. § 362 for an automatic stay in each of Plaintiffs' respective state-court actions. Pratt, Damon, and McCray responded by filing proofs of claim in the bankruptcy court. On December 14, 2000, a Reorganization Plan for New Vencor was proposed, and notice of the Plan was mailed to each of the Plaintiffs who had filed a proof of claim. The bankruptcy court confirmed the Plan in a Confirmation Order issued on March 19, 2001, with the Plan becoming effective on April 20, 2001. A key component of the Plan was summarized as follows:

> As part of that Plan, Ventas agreed to contribute $40 million to the funding of a settlement with the United States and agreed to amendments of certain leases which it had with [New Vencor], thereby reducing [New Vencor's] rental obligations. In exchange, Ventas was given a release of [Plaintiffs' personal injury and other]

claims arising from operation of the nursing homes prior to May 1, 1998.

*In re Vencor, Inc.*, 284 B.R. at 81. The terms of the Plan thus incorporated an injunction proscribing suits against New Vencor and Ventas for "any alleged improprieties committed in connection with [New] Vencor's bankruptcy, prior to the date of confirmation." *Pratt*, 273 B.R. at 111.

## B. Procedural background

Plaintiffs filed suit in the United States District Court for the Western District of Kentucky, alleging that Ventas obtained the releases in the Confirmation Order through fraudulent means. They argued that in overseeing New Vencor's bankruptcy proceedings, the bankruptcy court lacked jurisdiction over Plaintiffs' third-party action against Ventas. As a consequence, Plaintiffs contended that the Confirmation Order's injunction barring suit against Ventas had no preclusive effect on Plaintiffs' suit filed in the federal district court in Kentucky. Ventas responded by filing a motion to dismiss the complaint pursuant to Rules (9)(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

Relying on the Supreme Court's decision in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), the district court held that Plaintiffs were barred from collaterally attacking the Confirmation Order issued by the Delaware bankruptcy court. *Pratt*, 273 B.R. at 116. The district court subsequently granted Ventas's motion based upon a lack of subject matter jurisdiction. It also expressly declined to consider whether the bankruptcy court exceeded its statutory authority in granting injunctive relief to Ventas. *Id.* The court concluded that it could "not properly exercise appellate review over these earlier bankruptcy proceedings." *Id.* ((quoting 28 U.S.C. § 158(a): "An appeal . . . shall be taken *only* to the

district court for the judicial district in which the bankruptcy court is serving.") (emphasis in *Pratt*))

Plaintiffs were encouraged to pursue their claim in the Delaware bankruptcy court, in the United States District Court for the District of Delaware, and if necessary, in the United States Court of Appeals for the Third Circuit. *Id.* The complaint was initially dismissed with prejudice, but the district court later modified the order to make it "without prejudice," presumably so that Plaintiffs could raise their claims against Ventas in the proper forum.

Each side appealed the district court's decision, but this court held both appeals in abeyance while Plaintiffs pursued the merits of their claims in the Delaware bankruptcy court. The bankruptcy court subsequently held that there was no basis for Plaintiffs' assertion that it lacked jurisdiction to grant the releases to Ventas contained in New Vencor's Plan. *In re Vencor, Inc.*, 284 B.R. at 86. Plaintiffs did not appeal this latter decision.

On December 6, 2002, this court lifted the stay on the present appeal of the district court's decision in *Pratt v. Ventas*, 273 B.R. 108 (W.D. Ky. 2002). This matter is now ripe for disposition.

## II. ANALYSIS

### A. Standard of review

This court reviews whether the district court properly dismissed a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure using a de novo standard. *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). A motion to dismiss may be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (citation omitted).

## B. Application of the "collateral attack" doctrine

The district court held that Plaintiffs' suit filed in the Western District of Kentucky was an impermissible collateral attack on the bankruptcy court's Confirmation Order. *Pratt*, 273 B.R. at 116. A "collateral attack" is a tactic whereby a party seeks to circumvent an earlier ruling of one court by filing a subsequent action in another court. *Id.* at 114 (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992)). As applied to the present case, the district court below believed that Plaintiffs' suit against Ventas in Kentucky was an improper attempt to circumvent the Delaware bankruptcy court's Confirmation Order that enjoined Plaintiffs from pursuing their claims against Ventas.

The district court found that the Supreme Court's decision in *Celotex Corp. v. Edwards*, 514 U.S. 300 (1995), controlled the disposition of Plaintiffs' action. In *Celotex*, Bennie and Joann Edwards won a judgment against Celotex in the District Court for the Northern District of Texas for asbestos-related injuries. Celotex posted a supersedeas bond to stay the execution of the judgment pending its appeal to the Fifth Circuit. Northbrook Property and Casualty Insurance Company served as surety on the bond. The Fifth Circuit affirmed the judgment for the Edwardses, but, on that very day, Celotex filed a Chapter 11 petition for reorganization in the Bankruptcy Court for the Middle District of Florida. An injunction was issued by the bankruptcy court, pursuant to 11 U.S.C. § 105(a), which stayed all actions against Celotex. The district court in Texas nevertheless permitted the Edwardses to enforce the bond against Northbrook. Although the Fifth Circuit affirmed the district court's decision, it was subsequently reversed by the Supreme Court.

Because the Supreme Court concluded that the district court's action would "seriously undercut[] the orderly process of the law," *id*. at 313, it held that the Edwardses would not be permitted to collaterally attack the Florida bankruptcy court's § 105 injunction in the federal courts in Texas. The Court reasoned:

> It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected. If respondents believed the Section 105 Injunction was improper, they should have challenged it in the Bankruptcy Court, like other similarly situated bonded judgment creditors have done. If dissatisfied with the Bankruptcy Court's ultimate decision, respondents can appeal to the district court for the judicial district in which the bankruptcy judge is serving, see 28 U.S.C. § 158(a), and then to the Court of Appeals for the Eleventh Circuit, see §158(d).

*Celotex*, 514 U.S. at 313 (quotation marks and citation omitted).

In the present case, the district court found that *Celotex* was controlling, reasoning as follows:

> Like the claimants in [*Celotex*], Plaintiffs . . . assert that the Bankruptcy Court exceeded its jurisdictional bounds by enjoining post-confirmation suits against a non-debtor third-party for its pre-confirmation action. *Celotex* reaffirmed the rule that such a challenge cannot be sustained . . . .
>
> . . .
>
> [I]f the Confirmation Order was issued in error—*whether the result of either fraud or lack of jurisdiction*—it remains the responsibility of the Delaware Bankruptcy

Court, Delaware District Court, and, if necessary, the Third Circuit, to effect any necessary corrections.

*Pratt*, 273 B.R. at 116 (emphasis added).

In *Celotex*, the Supreme Court reaffirmed

the well-established rule that 'persons subject to an injunctive order issued by a court *with jurisdiction* are expected to obey that decree until it is modified or reversed, even if they have proper grounds to object to the order.'

514 U.S. at 306 (quoting *GTE Sylvania, Inc. v Consumers Union*, 445 U.S. 375, 386 (1980)) (emphasis added). The bankruptcy court's injunction in *Celotex*, therefore, was to be honored only if it was acting "with jurisdiction." Accordingly, the *Celotex* court examined whether the Florida bankruptcy court had jurisdiction to enjoin the Edwardses from proceeding against the third-party surety. The Court ultimately held that the Edwardses' action fell within the bankruptcy court's jurisdiction to adjudicate matters that are "related to" a case under Title 11. *Id*. at 310; *see* 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a). Because the Court found that the bankruptcy court did have jurisdiction, the Edwardses were barred from collaterally attacking the Florida bankruptcy court's injunction in the federal courts of Texas.

The district court in the present case, by contrast, "expressly decline[d] to consider whether the Bankruptcy Court exceeded its statutory authority in granting injunctive relief to Defendants." *Pratt*, 273 B. R. at 116. As excerpted above, the district court stated that it was the responsibility of the Delaware bankruptcy court, the Delaware district court, and the Third Circuit to correct any jurisdictional errors. *Id*. The district court's reliance on *Celotex* for the proposition

that litigants must go through the "proper channels of the statutorily-defined appellate process," *id*. at 116, to challenge a bankruptcy court's judgment was perfectly appropriate. But the district court should not have dismissed the Plaintiffs' case under the collateral attack doctrine without first determining that the Delaware bankruptcy court in fact had jurisdiction to enter the Confirmation Order. Its failure to do so, however, is harmless in light of the Plaintiffs subsequent return to the bankruptcy court for the very purpose of challenging that court's authority to grant Ventas a full release from their claims.

## C. Application of res judicata

While the present appeal was held in abeyance, Plaintiffs returned to Delaware to litigate their claim that the bankruptcy court lacked jurisdiction to release Ventas. *See In re Vencor, Inc.*, 284 B.R. 79 (Bankr. D. Del. 2002). The bankruptcy court reviewed two rounds of briefs and held two hearings on the myriad of claims raised by Plaintiffs. *Id*. at 82. Following these proceedings, the court issued an opinion with a section dedicated specifically to Plaintiffs' jurisdictional argument. The court "conclud[ed] that the Confirmation Order was not beyond [its] jurisdiction." *Id*. at 86.

Now that the Delaware bankruptcy court has adjudicated the issue of its jurisdiction in *In re Vencor, Inc.*, the Plaintiffs' right to question that decision in Kentucky is barred by both the collateral attack and res judicata doctrines. "A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not . . . reopen that question in a collateral attack upon an adverse judgment." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982).

Plaintiffs argue, however, that the timeliness of their motion was the real issue before the Delaware bankruptcy

court, not jurisdiction. At oral argument, Plaintiffs' counsel contended that the court's conclusion that it was not acting in excess of its jurisdiction was simply dicta. We read the bankruptcy court's discussion of Plaintiffs' jurisdictional issue not as dicta, however, but as an alternative holding. After concluding that the Plaintiffs' motion to set aside the Confirmation Order was untimely, *In re Vencor, Inc.,* 284 B.R. at 83-84, the court stated:

> The [Plaintiffs] assert that the relief requested in their Motion can *nonetheless* be granted. They argue that Rule 60(b)(4) permits the modification of the Confirmation Order because it was entered by this Court beyond its jurisdiction and is, therefore, void.

*Id*. at 85 (emphasis added). The above-quoted language indicates that the bankruptcy court considered the Plaintiffs' jurisdictional claim to be an alternative basis for relief. After examining that alternative ground, the court "conclude[d] that there is no basis for an assertion that this Court lacked jurisdiction to consider and grant the releases contained in the Plan." *Id*. at 86. We therefore conclude that the bankruptcy court's decision in *In re Vencor, Inc.* is a judgment on the merits of this jurisdictional issue. *See Gillespie v. U.S. Steel Corp.*, 321 F.2d 518, 529-30 (6th Cir. 1963) (holding that where a matter is argued before the court, and the court's opinion passes on the issue, the language is not dicta).

A judgment is "any order from which an appeal lies." Fed. R. Civ. P. 54(a). Because Plaintiffs did not appeal the bankruptcy court's decision to the district court in Delaware, the judgment of the bankruptcy court is now final. *See Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 377 (1940) ("The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a

collateral action."); *see also Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir. 1995) (holding that plaintiffs could not challenge the bankruptcy court's subject matter jurisdiction because they failed to appeal the bankruptcy court's confirmation order).

The Supreme Court addressed similar circumstances in *Stoll v. Gottlieb*, 305 U.S. 165 (1938). In *Stoll*, a bankruptcy court confirmed a debtor's reorganization plan that included a release of the debtor's bond guarantors. Gottlieb, one of the bondholders, did not appear at the hearing on the reorganization plan. The plan was confirmed over the objection of other bondholders, but no one appealed the confirmation order. Instead, Gottlieb launched a two-pronged attack. He first instituted an action against the bond guarantors in the Illinois state court system. Second, Gottlieb filed a motion to vacate the bankruptcy court's confirmation order on the basis that it did not have jurisdiction to cancel the bond guaranty. The bankruptcy court denied Gottlieb's contested motion. Back in state court, the bond guarantors defended themselves on the ground that the bankruptcy court's initial confirmation order and its subsequent order denying Gottlieb's jurisdictional claim were res judicata. The Supreme Court of Illinois found in favor of Gottlieb, but the United States Supreme Court reversed, explaining:

> We see no reason why a court in the absence of an allegation of fraud in obtaining the judgment, should examine again the question whether the court making the earlier determination on an actual contest over jurisdiction between the parties, did have jurisdiction of the subject matter of the litigation. In this case, the order upon the petition to vacate the confirmation settled the contest over jurisdiction.

*Id*. at 172.

In the present case, there are no allegations of fraud regarding the decision handed down in *In re Vencor, Inc.* As in *Stoll*, Plaintiffs engaged Ventas in "an actual contest over jurisdiction," and therefore "the order upon the petition to vacate the confirmation settled" this issue. *See also Republic Supply Co. v. Shoaf*, 815 F.2d 1046, 1053-54 (5th Cir. 1987) (holding that where a bankruptcy court determined that it had subject matter jurisdiction, its confirmation of a reorganization plan that released a third-party guarantor had res judicata effect in a subsequent suit).

We note, moreover, that the *Stoll* court "express[ed] no opinion as to whether the Bankruptcy Court did or did not have jurisdiction of the subject matter." *Id*. at 171 n.8. In fact, the Supreme Court assumed that the bankruptcy court "*did not have jurisdiction of the subject matter of the order.*" *Id*. at 171 (emphasis added). Whether the bankruptcy court erred in its determination was immaterial to the Court, which held that

> we base our conclusion here on the fact that in an actual controversy the question of the jurisdiction over the subject matter was raised and determined adversely to the respondent. That determination is res judicata of that issue in this action . . . .

*Id.* at 177. We likewise pass no judgment on whether the Delaware bankruptcy court erred in determining that it had jurisdiction to enter the Confirmation Order and the releases contained therein. For our purposes, the fact that the Delaware bankruptcy court has decided the matter is enough to preclude us from entertaining an identical claim in this court.

## D. Ventas's cross-appeal

In its original order, the district court dismissed Plaintiffs' complaint "with prejudice." *Pratt*, 273 B.R. at 116. The court subsequently amended its dismissal as being "without prejudice" because the "order was limited solely to the question of whether jurisdiction was proper in the Western District of Kentucky, and did not reach the merits of the parties' underlying substantive claims." In doing so, the court explained that it had not intended to preclude Plaintiffs from litigating their claims in an appropriate venue, i.e., the Delaware bankruptcy court.

On its face, the motion presented by Ventas to the district court was brought pursuant to Rule 12(b)(6), which authorizes a dismissal for failure to state a claim. A "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits,'" and is therefore done with prejudice. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). By contrast, "a dismissal for lack of subject matter jurisdiction does not operate as an adjudication on the merits for preclusive purposes." *Holloway v. Brush*, 220 F.3d 767, 778 (6th Cir. 2000) (citing Rule 41(b) of the Federal Rules of Civil Procedure) (quotation marks omitted). This court has explained:

> The rationale behind this is that merely because one court does not have jurisdiction over a dispute does not necessarily mean that another court is precluded from properly exercising jurisdiction over the matter. Moreover, if a court does not have jurisdiction over a matter, it cannot properly reach the merits of the case.

*Wilkins v. Jakeway*, 183 F.3d 528, 533 n.6 (6th Cir. 1999) (citation omitted).

Ventas is technically correct that the district court dismissed Plaintiffs' claim pursuant to Ventas's Rule 12(b)(6)

motion and that such dismissals are presumptively "with prejudice." But a plain reading of the district court's opinion and amended order indicates that the district court's basis for dismissing Plaintiffs' claim was jurisdictional in nature and was therefore "without prejudice." Because the district court amended its order to be "without prejudice," Plaintiffs were able, while the present appeal was being held in abeyance, to pursue their claim in the Delaware bankruptcy court. Whether the district court erred in amending its order is therefore moot.

### III.  CONCLUSION

For all the reasons set forth above, we **AFFIRM** the judgment of the district court.